**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE**

LOUIS SMITH

    *Plaintiff*,

    v.

AHMED M. FATTOUH, BRANDON
BENTLEY, JEFFREY HARRIS, PIETRO
CINQUEGRANA, MATTHEW LUCKETT,
ALAN PINTO, BRIAN Q. PHAM, MINISH
K. PATEL, INTERPRIVATE ACQUISITION
MANAGEMENT LLC, AND
INTERPRIVATE LLC,

    *Defendants*.

No. _____

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendants Ahmed M. Fattouh, Brandon Bentley, Jeffrey

Harris, Pietro Cinquegrana, Matthew Luckett, Alan Pinto, Brian Q. Pham, Minish K. Patel,

(collectively, the "Individual Defendants"), by and through their undersigned counsel, hereby

remove the above-captioned action, pursuant to 28 U.S.C. §§ 1441 and 1446 and the applicable

provisions of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") 15 U.S.C.

§§ 78bb(f) and 77p, from the Court of Chancery of the State of Delaware to the United States

District Court for the District of Delaware.

Pursuant to 28 U.S.C. § 1446(a), the Individual Defendants set forth below the following

grounds for removal:

1.　　On or about March 7, 2024, Plaintiff filed a Complaint in the action *Louis Smith*

*v. Ahmed M. Fattouh, et al.*, Civil Action No. 2024-0221-LWW (the "Action") in the Court of

Chancery of the State of Delaware bringing claims against the Individual Defendants for alleged

breaches of their fiduciary duties (Counts I-IV) and for unjust enrichment (Count V).  The

Complaint[1] filed in this Action is attached hereto as **Exhibit A**.[2]

2.       Defendants deny the allegations of the Complaint, which amount to a stock-drop

case masquerading as a merger challenge.  Plaintiff is a stockholder of a publicly traded

company, InterPrivate Acquisition Corp. ("InterPrivate"), traded on the NYSE as "AEVA".

Plaintiff claims, on his own behalf and as a putative class representative, that he was harmed by

"false and misleading disclosures and material omissions to stockholders" that InterPrivate

included in its S.E.C. filings issued in connection with the company's sale of stock to an

intended merger target.  According to Plaintiff, these misrepresentations inflated the value of the

merger and caused class members to continue holding InterPrivate stock rather than convert their

stock to cash by exercising a contractual redemption right acquired with the shares.  The lawsuit

seeks to recover damages based on the drop in InterPrivate's stock price that caused a "90% loss

for public stockholders who could have redeemed in lieu of investing the Merger." (Compl. ¶

118).  The lawsuit does not challenge the merger or the shareholder vote—it seeks damages for

investment losses.

3.       InterPrivate was incorporated as a special purpose acquisition company ("SPAC")

formed by Defendants Fattouh, Bentley, InterPrivate Acquisition Management LLC, and

InterPrivate LLC.  (*Id.* ¶ 1).  The Complaint alleges that a SPAC "is a publicly traded company

---

[1] After defense counsel informed counsel for plaintiff of the Individual Defendants' intent to remove on SLUSA grounds, Plaintiff filed an amended complaint under seal.  As that amended complaint has not yet been served on any defendant and is not the "initial pleading setting forth the claim for relief" giving rise to the basis for removal (*see* 28 U.S.C. § 1446(b)(1)), the original complaint is being filed with this removal notice.  If the Individual Defendants are served with an amended complaint, such pleading will be filed with this Court.

[2] The Complaint erroneously named "Pietor Cinquegrana" and "Allen Pinto" as defendants in the Action.  The caption to this notice of removal corrects that error and names the proper defendants: Pietro Cinquegrana and Alan Pinto.

without commercial operations that is formed strictly to raise capital through an IPO for the purpose of entering into a business combination with another company within a specified period of time. . . .  When a business combination is agreed to by the SPAC, and prior to the transaction's consummation, the SPAC's public stockholders are presented with a decision: they can elect to redeem all or a portion of their shares—and receive a proportionate share of the funds held in trust— or they can invest those funds in the post-combination company.  If a SPAC does not close a business combination within the time specified in its charter, it is required to liquidate, in which circumstances public stockholders would receive a proportionate share of the IPO proceeds and any other contributions to the trust, plus interest accrued in the trust." (*Id.* ¶ 2).

4. According to the Complaint, Plaintiff's injuries trace back to before InterPrivate's initial public offering ("IPO").  The Complaint alleges that "InterPrivate's structure created an inherent conflict of interest between the Defendants and the public stockholders," because if the SPAC failed to complete a business combination, the IPO proceeds would be distributed to the public shareholders while the Individual Defendants would walk away with nothing.  (*Id.* ¶ 7). Plaintiff alleges that "[p]rior to the IPO" and "[c]oncurrently with the IPO," the Individual Defendants used their alleged control over InterPrivate to issue themselves interests in the company that would enrich Defendants and dilute common stockholders' interests if (and only if) a merger was completed, which Plaintiff contends created "a perverse incentive to complete a merger regardless of whether it was in the best interests of the Company's public stockholders." (*Id.* ¶ 6-7).  The Complaint alleges that Defendants "had an interest in discouraging public stockholders from redeeming their shares, as each share redeemed would dilute [Defendants'] interests in the post-transaction company and reduce the liquidity provided to the post-transaction company." (*Id.* ¶ 7).

3

5.      After the IPO, the scheme alleged in the Complaint culminated in InterPrivate's merger with the private company, Aeva, Inc. ("Aeva"), which the Complaint refers to as "Legacy Aeva." (*Id*).  The Complaint alleges that the Individual Defendants "forc[ed] through a value destroying merger with Legacy Aeva which was accomplished through the provision of ***false and misleading disclosures and material omissions to stockholders*** impairing stockholders' right to redeem their shares in lieu of investing in a merger." (Compl. ¶ 3 (emphasis added)).  These allegedly false and misleading disclosures were made in a document filed with the U.S. Securities and Exchange Commission on February 12, 2021 labeled as a "Proxy/Prospectus/Consent Solicitation Statement" (the "Proxy/Prospectus").  *See* InterPrivate Acquisition Corp., Proxy/Prospectus/Consent Solicitation Statement (Feb. 12, 2021).  Plaintiff contends, "Because the Proxy omitted and obfuscated material information needed to determine the net cash underlying InterPrivate shares—and thus the value of those shares—InterPrivate's public stockholders could not make an informed decision whether to redeem their shares or invest in the Merger."  (Compl. ¶ 91).  In particular, Plaintiff contends, "the Proxy materially misrepresented the value of Legacy Aeva and omitted crucial information Defendants discovered in due diligence that raised considerable doubt regarding the Company's financial prospects following the Merger."  (*Id.* ¶ 93).

6.      Plaintiff claims that that as a result of Defendant's actions challenged in this matter, "Plaintiff and Class members were harmed due to the impairment of their redemption rights prior to the Merger."  (Compl. ¶¶ 132, 138, 145).  This alleged injury resulted from the drop in InterPrivate's stock price after the merger.  (*E.g.*, *id*. ¶ 118).  The merger itself and the votes approving the merger are not challenged in the action; Plaintiff instead seek damages based on the money lost through continued investment in nationally traded securities.  Plaintiff also

4

claims that the Individual Defendants were unjustly enriched by persuading Plaintiff and proposed class members not to exercise their redemption rights. (*Id.* at 150).

7.    This Notice of Removal is proper under 28 U.S.C. § 1331, which states that district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

8.    Further, 28 U.S.C. § 1441(a) permits removal of any state court civil action over which the District Court has original jurisdiction.

9.    This Court has subject matter jurisdiction over this action under 15 U.S.C. § 78bb(f)(2). Plaintiff's state law claims against the Individual Defendants are class action claims involving "an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security," which is precluded by the Securities Litigation Uniform Standards Act ("SLUSA"). Under SLUSA, "any covered class action" brought by a private party based on state statutory or state common-law claims of misrepresentation, untrue statement, or omission of a material fact in connection with the purchase or sale of a "covered security" is removable to federal court. *See* 15 U.S.C. §§ 78bb(f)(1)(2) and 77p(b)(c).

10.    Under SLUSA, a "covered class action" is defined to include "any single lawsuit in which . . . one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the protective class predominate over any questions affecting only individual persons or members . . ." 15 U.S.C. §§ 77p(f)(2)(A)(i)(II); 78bb(f)(5)(B)(i)(II). Plaintiff brings the Action "on behalf of himself and all record and beneficial holders of InterPrivate common stock, who held such stock as of the redemption deadline and who elected not to redeem all or some of their stock" (Compl. ¶ 119).

11.     The security at issue in the Complaint, the common stock of InterPrivate Acquisitions Corp., are a "covered security" under SLUSA because it meets the registration requirements laid out in 15 U.S.C. §§ 77a(b)(1) and (2). *See also* 15 U.S.C. §§ 77p(f)(3).

12.     The misrepresentations and omissions alleged in the Complaint were made in connection with the sale of common stock by InterPrivate to existing Aeva shareholders as part of the merger consideration. *See* InterPrivate Acquisition Corp., Proxy/Prospectus/Consent Solicitation Statement (Feb. 12, 2021). Plaintiff contends that InterPrivate's allegedly misleading disclosures caused Plaintiff and proposed class members to refrain from exercising their contractual redemption right to exchange their InterPrivate shares for cash. (Compl. at ¶¶ 2-3, 7, 14. 79-92). These allegations are sufficient to satisfy SLUSA's "in connection with the purchase or sale of a covered security" requirement because the alleged misrepresentations "coincide" with the securities transaction in which InterPrivate sold its stock to Aeva shareholders. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 87 (2006); *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1130 (9th Cir. 2002).

13.     The Complaint alleges that misrepresentations and omissions in the Proxy/Prospectus deceived the market in the same way that Plaintiff and the proposed class members were deceived—*i.e.*, by inflating the value of the merger as reflected in InterPrivate's stock price. The Complaint alleges that on the first day of public trading post-merger, the market price for InterPrivate (renamed "Aeva" after the merger) closed at $16.16, far above the $10.07 per share redemption value Plaintiff declined to take. (Compl. ¶¶ 16, 90). The Complaint further alleges that after the merger closed, "reality set[] in" as the purportedly true condition of Aeva was revealed and the market price for the company's stock dropped to approximately $1 per share. (Compl. at 44, *id.* ¶¶ 116-18). Although Plaintiff attempts to avoid seeking relief on

6

behalf of purchasers or sellers of InterPrivate/Aeva shares[3], "the identity of the plaintiffs does not determine whether the complaint alleges fraud 'in connection with the purchase or sale' of securities." *Dabit*, 547 U.S. at 89. As in *Dabit*, the misconduct of which Plaintiff complains purportedly caused "fraudulent manipulation of stock prices," which the Supreme Court held in *Dabit* "unquestionably qualifies as fraud 'in connection with the purchase or sale' of securities" under SLUSA. *Dabit*, 547 U.S. at 89.

14.     The Complaint further alleges that the misrepresentations in the Proxy/Prospectus were made as a part of a larger scheme to enrich the Individual Defendants that began in the runup to and included InterPrivate's IPO. (Compl. ¶¶ 6-7, 31-39). As described above, the Complaint alleges that actions taken by the Individual Defendants "prior to the IPO" and "concurrently with the IPO" meant that "InterPrivate's structure created an inherent conflict of interest between the Defendants and the public stockholders." (*Id.* ¶¶ 4-6, 34). The Complaint alleges that these actions resulted in Individual Defendants making the misrepresentations and omissions described above. (*Id.* ¶¶ 6-8, 81). Such allegations of "fraud and deception" beginning with a company's IPO and resulting in an allegedly misleading proxy dissemination place this Action "squarely within the [] parameters" of SLUSA's requirement that the matter be "in connection with the purchase or sale of a covered security." *Zoren v. Genesis Energy, L.P.*, 195 F. Supp. 2d 598, 604 (D. Del. 2002).

15.     The carve-outs to SLUSA's preclusion of covered class action under 15 U.S.C. § 77p (d) do not apply.

---

[3] Notwithstanding such efforts, the putative class does include shareholders who purchased their InterPrivate shares *after* the allegedly false Proxy/Prospectus was filed with the S.E.C.

16. The carveout under 15 U.S.C. § 77p (d)(1)(B)(i) does not apply because this action does not "involve[] the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer." Here, the exercise of the shareholders' redemption rights is not a purchase or sale of securities. The shareholder's exercise of his redemption right constitutes the exercise of a previously acquired contractual right, not a purchase or sale of a covered security. *See Atkinson v. Morgan Asset Mgmt., Inc.,* 658 F.3d 549, 553–54 (6th Cir. 2011).

17. Likewise, the carve-out under 15 U.S.C. § 77p (d)(1)(B)(i) does not apply because the claims in the action do not "involve any recommendation, position, or other communication with respect to the sale of securities of the issuer that—(i) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and (ii) concerns decisions of those equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights." The Complaint does not allege any claims concerning a shareholders' voting rights; rather, the claims concern the shareholder's exercise of a contractual redemption right that Delaware courts have held in SPACs are "decoupled" from voting rights. *Delman v. GigAcquisitions3, LLC,* 288 A.3d 692, 721 (Del. Ch. 2023)

18. The action does not challenge the merger or the shareholder vote approving the merger. Nor does the action concern a tender/exchange offer, or exercising dissenters' or appraisal rights.

19. Where alleged misrepresentations serve as the factual predicate of a plaintiff's' state law claims, such claims are removable by SLUSA. *See, e.g., Rowinski v. Salomon Smith Barney, Inc.,* 398 F.3d 294, 300 (3d Cir. 2005) (holding that where "allegations of a material

misrepresentation serve as the factual predicate of a state law claim, the misrepresentation prong is satisfied under SLUSA"). Allegations of material misrepresentations permeate each of Plaintiff's state law claims and, therefore, are removable under SLUSA.

20. For the above reasons, Plaintiff's state court action is a "covered class action" by a private party alleging "an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security," and is removable pursuant to 15 U.S.C. § 78bb.

21. This Notice is timely filed under 28 U.S.C. § 1446(b) because this Notice of Removal has been filed within thirty (30) days after service of the Complaint in this Action on March 15, 2024. Affidavits of service filed in the Court of Chancery are attached hereto as **Exhibit B**.

22. Venue is proper in this district under 28 U.S.C. § 1441(a) and 15 U.S.C. §§ 78bb(f)(2) and 77p(c). This district and division embrace the place in which the removed action had been pending.

23. Defendants InterPrivate Acquisition Management LLC and InterPrivate LLC consent to removal of this Action.

24. Defendants reserve the right to submit additional evidence and argument as needed to supplement this "short and plain statement of the grounds for removal." 28 U.S.C.§ 1446(a).

WHEREFORE, the Individual Defendants hereby remove this Action from the Court of Chancery of the State of Delaware to the United States District Court for the District of Delaware.

9

MORRIS, NICHOLS, ARSHT
& TUNNELL LLP

OF COUNSEL:

/s/ D. McKinley Measley
D. McKinley Measley (#5108)
Phillip Reytan (#7255)
1201 North Market Street
Wilmington, DE  19801
(302) 658-9200

BOIES SCHILLER FLEXNER LLP

Joshua I. Schiller*
44 Montgomery Street
San Francisco, CA 94104
(415) 293-6800

*Attorneys for Defendants Ahmed M. Fattouh, Brandon Bentley, Jeffrey Harris, Pietro Cinquegrana, Matthew Luckett, Alan Pinto, Brian Q. Pham, Minish K. Patel, InterPrivate Acquisition Management LLC and InterPrivate LLC*

Joseph Kroetsch*
333 Main Street
Armonk, NY 10504
(914) 749-8200

*Pro hac vice* forthcoming

April 15, 2024

10