Michael J. Barry (#4368)
Kelly L. Tucker (#6382)
**GRANT & EISENHOFER P.A.**
123 S. Justison Street, 7th Floor
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100

*Counsel for Plaintiff Louis Smith*

[ADDITIONAL COUNSEL IN SIGNATURE BLOCK]

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LOUIS SMITH<br><br>　　　　Plaintiff,<br><br>　v.<br><br>AHMED M. FATTOUH, BRANDON BENTLEY, JEFFREY HARRIS, PIETRO CINQUEGRANA, MATTHEW LUCKETT, ALAN PINTO, BRIAN Q. PHAM, MINESH K. PATEL, INTERPRIVATE ACQUISITION MANAGEMENT LLC, AND INTERPRIVATE LLC,<br><br>　　　　Defendants. | No. 1:24-cv-00484-GBW<br><br>**PUBLIC VERSION: MAY 22, 2024** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF LOUIS SMITH'S MOTION FOR REMAND

UNDER SEAL

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................................ ii

STATEMENT OF THE CASE........................................................................................ 1

SUMMARY OF THE ARGUMENT .............................................................................. 2

CONCISE STATEMENT OF FACTS ........................................................................... 2

ARGUMENT .................................................................................................................. 6

I.      REMOVAL WAS IMPROPER UNDER SLUSA................................................ 6

        A.      THE ACTION IS NOT A "COVERED CLASS ACTION" SUBJECT TO REMOVAL.............. 8

        B.      THE "DELAWARE CARVE-OUT" APPLIES ................................................. 10

II.     DEFENDANTS WAIVED THEIR RIGHT TO REMOVAL ......................................... 15

CONCLUSION............................................................................................................. 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alessi v. Beracha*,
    244 F. Supp. 2d 354 (D. Del. 2003)................................................................................11, 13, 14

*Carlyle Investment Mgmt., L.L.C. v. Carlyle Capital Corp. Ltd.*,
    800 F. Supp. 2d 639 (D. Del. 2011)...............................................................................................6

*Chadbourne & Parke LLP v. Troice*,
    571 U.S. 377 (2014)......................................................................................................................10

*Definition Servs., Inc. v. GVA Cap. Ltd.*,
    No. 1:21-CV-00741, 2021 WL 6846201 (D. Del. Nov. 17, 2021).............................................15

*E.I. Du Pont de Nemours & Co. v. Quality Carriers, Inc.*,
    No. CIV. 10-534-SLR, 2011 WL 776211 (D. Del. Feb. 28, 2011) ...............................6, 15, 16

*Fleming & Hall, Ltd. v. Cope*,
    30 F. Supp. 2d 459 (D. Del. 1998)...............................................................................................16

*Foster v. Chesapeake Ins. Co.*,
    933 F.2d 1207 (3d Cir. 1991).......................................................................................................15

*ING Bank, FSB. v. Palmer*,
    Civ. No. 09-CV-897, 2010 WL 3907825 (D. Del. Sept. 29, 2010)......................................2, 15

*InterDigital, Inc. v. Wistron Corp.*,
    No. CV 15-478-LPS, 2015 WL 4537133 (D. Del. June 18, 2015).............................................16

*In re Lordstown Motors Corp. Stockholders Litig.*,
    No. 2021-1066-LWW, 2022 WL 678597 (Del. Ch. Mar. 7, 2022)........................................7, 8

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972)..........................................................................................................................15

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006)...............................................................................................................8, 11, 16

*In re Multiplan Corp. Stockholders Litig.*,
    268 A.3d 784 (Del. Ch. 2022)..............................................................................................8, 9, 14

**Statutes**

15 U.S.C. § 78bb....................................................................................................... *passim*

**Other Authorities**

S. Rep. 105–182 (May 4, 1998) ................................................................................................11

**STATEMENT OF THE CASE**

On March 7, 2024, Plaintiff Louis Smith ("Plaintiff") filed a Verified Class Action Complaint (the "Initial Complaint") in the Delaware Court of Chancery asserting Delaware state law claims for breaches of fiduciary duty and unjust enrichment. Specifically, Plaintiff alleged that defendants Ahmed M. Fattouh, Brandon Bentley, Jeffrey Harris, Pietro Cinquegrana, Matthew Luckett, Alan Pinto, Brian Q. Pham, Minesh K. Patel, InterPrivate Acquisition Management LLC, and InterPrivate LLC (collectively, "Defendants," each a "Defendant") impaired his redemption rights while engaging in a conflicted and unfair transaction. Defendants were the directors, officers, and controlling stockholders of special purpose acquisition company ("SPAC") InterPrivate Acquisition Corp. ("InterPrivate" or the "Company"), a Delaware corporation now known as Aeva Technologies, Inc., in which Plaintiff holds shares of common stock. Plaintiff filed his Initial Complaint in the Court of Chancery, as he was required to do pursuant to the forum selection provision in InterPrivate's Certificate of Incorporation.

On April 10, 2024, Plaintiff filed his Amended Verified Class Action Complaint (the "Amended Complaint" or "Complaint"), which was served on Defendants Ahmed M. Fattouh, Brandon Bentley, Jeffrey Harris, Pietro Cinquegrana, Matthew Luckett, Alan Pinto, Brian Q. Pham, and Minesh K. Patel (the "Removing Defendants") on April 12, 2024.[1] On April 15, 2024, the Removing Defendants filed a Notice of Removal (ECF No. 2) (the "Notice").

---

[1] The Amended Complaint and proof of service thereof are submitted herewith as Exhibit A. While Defendants asserted in their Notice both that they: (1) had not been served with the Amended Complaint prior to the filing of their Notice of Removal and (2) would file the Amended Complaint upon being served, both appear to be untrue, despite Plaintiff's counsel's request on May 6, 2024 that Defendants file the Amended Complaint, as they promised the Court they would do. Citations to "Compl. ¶__" or "Complaint" herein are citations to the Amended Complaint.

## SUMMARY OF THE ARGUMENT

Plaintiff respectfully requests that the Court remand this Action to the Delaware Court of Chancery for the following reasons:

I.    Removal was inappropriate under the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb, because:

    A.    No "covered securities" were "sold or purchased" "in connection with" Defendants' alleged misrepresentations or omissions of material fact by anyone other than the "fraudsters," as required for removal under 15 U.S.C. § 78bb(f)(1); and

    B.    Even if SLUSA does apply, the "Delaware carve-out" bars removal. 15 U.S.C. § 78bb(f)(3); and

II.   A mandatory forum selection provision precludes removal from the Delaware Court of Chancery. *ING Bank, FSB. v. Palmer*, Civ. No. 09-CV-897, 2010 WL 3907825 (D. Del. Sept. 29, 2010).

## CONCISE STATEMENT OF FACTS

Plaintiff was a stockholder of InterPrivate, which merged with private company Aeva, Inc. ("Legacy Aeva") on March 12, 2021 (the "Merger") and is now renamed Aeva Technologies, Inc. ("New Aeva" or the "Company"). Compl. ¶¶ 1, 18, 29.

InterPrivate was a publicly traded SPAC, incorporated in Delaware, without any commercial operations. *Id.* ¶¶ 2, 29. Instead, Defendants formed InterPrivate for the sole purpose of entering into a business combination with another company. *Id.* ¶¶ 2-3. On February 3, 2020, InterPrivate went public through its IPO. *Id.* ¶ 36. In the IPO, InterPrivate sold 21,000,000 "Public

Units" to public investors at a price of $10.00 per share.[2] *Id.* Each Public Unit consisted of one share of Class A common stock and one-half of one warrant.[3] *Id.* Per InterPrivate's incorporating documents, the Company had two years to find a business combination partner or to liquidate. *Id.* ¶ 40. InterPrivate held the proceeds from the IPO in a trust for the benefit of public stockholders. *Id.* ¶ 2. Pursuant to the terms of InterPrivate's Charter, the public stockholders had the right to redeem all or a portion of their InterPrivate stock should InterPrivate enter into a proposed business combination. *Id.* ¶¶ 2, 7. It was not until InterPrivate satisfied all stockholders' redemption demand that any of the remaining funds held in the trust would become assets of the Company that could be used to consummate the Merger. *Id.* In the event of a liquidation, public stockholders would have received the same $10.00 per share plus interest. *Id.*

As with most many SPACs, each of the Defendants had a massive incentive to consummate a business combination and minimize redemptions in order to maximize their own financial interests. *Id.* ¶ 3. InterPrivate sold 6,037,500 "Founder Shares" (following a stock split) to its "Sponsor," Defendant InterPrivate Acquisition Management LLC, in exchange for $25,000, or approximately $0.004 per share. *Id.* ¶ 4. The Sponsor allocated 30,000 of these Founder Shares to each of InterPrivate's purportedly "independent directors," Defendants Jeffrey Harris, Pietro Cinquegrana, and Matthew Luckett. *Id.* ¶ 6. The Sponsor also purchased 501,081 "Private Placement Units" in exchange for $6.18 million. *Id.* ¶ 5. Unlike the shares held by InterPrivate's public stockholders, the Founder Shares and Private Placement Units did not have, or Defendants waived, any redemption or liquidation rights. *Id.* ¶¶ 5, 7. Thus the Founder Shares purchased for

---

[2] A week after the IPO, InterPrivate generated additional trust proceeds of $31.5 million through the sale of an additional 3.15 million Public Units, placing a total of $241,500,000 in the trust. Compl. ¶ 37.

[3] Each whole warrant was exercisable in exchange for one share of Class A common stock at an exercise price of $11.50. Compl. ¶ 36.

less than a penny per share would only have value if and when InterPrivate closed a business combination. *Id.* And, if no merger were consummated, the Public Placement Units would be worthless and the Sponsor would lose the entirety of its investment. Further, the greater the number of redemptions, the less cash would remain in the trust to contribute to the Merger and the less cash that would be underlying each Founder Share and Private Placement Unit. *Id.* This provided Defendants with a perverse incentive to get a deal—any deal—done. *Id.*

Enticed by these incentives, after InterPrivate went public, Defendants rushed into discussions with Legacy Aeva. *Id.* ¶ 52. On September 13, 2020, Legacy Aeva provided InterPrivate with access to a data room. *Id.* ¶ 55. Twelve days later, on September 25, 2020, Defendants and Legacy Aeva had already executed a final letter of intent that set in place all material terms of the Merger. *Id.* ¶ 65. InterPrivate's board of directors had not even met. *Id.* The Board met for the first time to discuss the Merger *after* the letter of intent was executed. *Id.*

Prior to and following the execution of the final letter of intent, Defendants knew or should have known of several issues with Legacy Aeva's business and its projections that called into question the valuation assigned to the Merger and Merger consideration. Among other things, Defendants learned that:





Notwithstanding their personal, financial incentives, Defendants could have complied with their fiduciary duties, allowed public stockholders to make fully informed redemption decisions and voting decisions with regard to the Merger, and put controls in place to address their conflicts. Unfortunately, Defendants did not. Instead of using the "bad facts" they uncovered in due diligence that called into serious question Legacy Aeva's future prospects, valuation, and the reliability of its projections to renegotiate the stock exchange in the Merger or to back out of the deal, Defendants caused InterPrivate to enter into the value-destructive Merger with Legacy Aeva and published the false and misleading proxy statement and consent solicitation (the "Proxy") that encouraged stockholders to vote in favor of the Merger and to forego redemption, so that they could realize their windfalls from their Founder Shares. *Id.* ¶ 8.

The Proxy contained misleading statements and omitted material information to ensure a necessary stockholder vote in favor of the Merger and to deter redemptions. *Id.* ¶ 80. The Proxy included the Board's recommendation that stockholders vote in favor of the Merger and set the stockholder vote for March 11, 2021. *Id.* The Proxy also informed stockholders of their right to redeem their shares for approximately $10.07 per share prior to the Merger. *Id*. Based on the Board's recommendation, and the information contained in, or omitted from, the Proxy, a majority of the public stockholders voted to approved the Merger, and the Merger closed. *Id.* ¶ 81.

The fruits of Defendants' breaches were realized, and on March 21, 2021, the first trading day post-Merger, the Company's stock closed at $16.16 per share. Based on that day's closing

price, Defendants' Founder Shares were worth $97.6 million, a return of over ███████ on their $25,000 investment. *Id.* ¶ 83.

## ARGUMENT

In evaluating a motion to remand, it is the removing party that bears the burden of demonstrating federal jurisdiction. *E.I. Du Pont de Nemours & Co. v. Quality Carriers, Inc.*, No. CIV. 10-534-SLR, 2011 WL 776211, at *2 (D. Del. Feb. 28, 2011). Under binding Third Circuit precedent, "the removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Town of Georgetown v. David A. Bramble Inc.* (quoting *Boyer v. Snap-On Tools Corp.*, 913 F.3d 108, 111 (3d Cir. 1990) (citing *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987) (citing *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985))))). Thus, "[r]emand is appropriate whenever *any doubt exists* as to whether removal was proper." *Carlyle Investment Mgmt., L.L.C. v. Carlyle Capital Corp. Ltd.*, 800 F. Supp. 2d 639, 644 (D. Del. 2011) (emphasis added).

## I.    REMOVAL WAS IMPROPER UNDER SLUSA

In their attempts to shoehorn Plaintiff's claims into the framework of SLUSA, Defendants argue that Plaintiffs' claims are both "in connection with" and "not in connection with" the sale or purchase of securities, stretch Plaintiff's claims beyond recognition, and add allegations to the Complaint that simply are not there, while ignoring the allegations inconvenient for their contentions. As Defendants do not contest, however, Plaintiff has asserted only state law claims for breach of fiduciary duty and unjust enrichment. Defendants' state law violations are related to their disloyal impairment of Plaintiff and the class' redemption and stockholder voting rights arising in connection with the Merger, not to the sale or purchase of any securities by Plaintiff or the Class. Further, even if SLUSA did apply, the "Delaware carve-out" requires remand.

6

Specifically, the Complaint alleges that each of the Defendants breached his or its fiduciary duties by: (i) "prioritizing their own personal, financial, and/or reputational interests" over that of stockholders; and (ii) "recommending the [value-destroying] Merger to stockholders and impairing [stockholders'] redemption rights . . . ." Compl. ¶¶ 14, 132. The redemption rights Defendants impaired are a unique feature of SPACs like InterPrivate. At the time of its incorporation, InterPrivate had no commercial operations of its own and was formed for the sole purpose of entering into a business combination agreement with another company to take that company public, without the disclosure requirements imposed in a traditional initial public offering ("IPO"). If and when InterPrivate entered into an agreement to merge, InterPrivate's public stockholders would have the right to redeem their shares in exchange for the IPO price of $10.00 per share, plus interest—that is, if they did not want to participate in the Merger, they would not have to sell their stock to opt out—they could get back their initial investment from the trust without consequence.

The Delaware Court of Chancery has held that a claim that a stockholder's redemption rights were impaired is "fundamentally different" than claims brought under the Securities Act of 1933 and Securities Act and Exchange Act of 1934 ("Securities Acts"). *In re Lordstown Motors Corp. Stockholders Litig.*, No. 2021-1066-LWW, 2022 WL 678597, *4 (Del. Ch. Mar. 7, 2022). The "crux" of claims under Securities Acts "rests on whether [here, the Company's] stock price was 'artificially inflated' by false and misleading disclosures." *Id.* Whereas, the crux of Plaintiff's claims here:

> by contrast, allege[s] that the defendants harmed the putative class members by impairing the informed exercise of their redemption rights to the defendants' benefit. These are quintessential Delaware concerns—not, as the defendants argue, a rebranding of securities claims about material misstatements as fiduciary duty claims.

*Id.* Such claims are not evaluated under the confines of the Securities Acts; they are subject to entire fairness review. Under this standard of review, "defendant fiduciaries have the burden 'to demonstrate that the challenged act or transaction was entirely fair to . . . its stockholders,'" as to both "fair price and fair dealing." *In re Multiplan Corp. Stockholders Litig.*, 268 A.3d 784, 815 (Del. Ch. 2022). Indeed, "even a superficial review of the Complaint makes plain that the plaintiffs are pursuing more than a narrow disclosure claim. The claims advanced 'invoke[ ] both the duty of loyalty and disclosure duties implicating director loyalty.'" *In re Lordstown*, 2022 WL 678597, at \*5 (citing and quoting *In re Multiplan*, 268 A.3d at 815). Removal pursuant to SLUSA of these quintessential Delaware claims  was improper.

A.    THE ACTION IS NOT A "COVERED CLASS ACTION" SUBJECT TO REMOVAL

SLUSA does not preempt any cause of action, it merely prohibits certain state law claims from being maintained as class actions. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 87 (2006). Specifically, SLUSA provides that:

> **(1) Class action limitations.** No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
> > **(A)** an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
> >
> > **(B)** that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1). SLUSA further provides that such covered class actions (as set forth in the foregoing subsection (1)) are removable to federal court, *id.* at 78bb(f)(2).

Plaintiff alleges that Defendants here disloyally impaired his redemption and voting rights associated with InterPrivate shares owned by him—not misstatements, omissions, or manipulative or deceptive practices in connection with the sale or purchase of any securities. Compl. ¶¶ 3, 7, 14,

80-82, 84, 92. Specifically, Plaintiff alleges that Defendants, motivated by the substantial non-ratable benefits they would receive if InterPrivate's Merger with Legacy Aeva were to proceed, conducted themselves in breach of their fiduciary duties in connection with Plaintiff's and Class members' redemption and voting decisions. *Id.* Plaintiff need not plead misrepresentations or omissions to prove his claims—it is Defendants that will bear the burden of establishing fair process and fair price. *In re MultiPlan*, 268 A.3d at 815-16.. Misrepresentations and material omissions in seeking stockholder action are indicia of unfair process, but are not required in the context of a controlling stockholder transaction, particularly where no special committee was formed (as with InterPrivate). *Id.*; *see generally Kahn & M&F Worldwide Corp.*, 88 A.2d 635, 645 (Del. 2014) (discussing the requirements for controlling stockholder transactions to receive business judgment deference).

Here, while not *necessary* to prove his claims, Plaintiff alleges that Defendants made misrepresentations and omitted material information in the Proxy, issued to InterPrivate's stockholders, which informed stockholders of their redemption rights and requested stockholder approval of the Merger and the share exchange contemplated by the Merger Agreement. Compl. ¶ 80; *see generally* Proxy. The Proxy was not issued, disseminated, or directed to Legacy Aeva stockholders, who had already approved the Merger and entered into the Merger Agreement prior to the Proxy's issuance (on November 2, 2020). Compl. ¶ 79.

Defendants acknowledge Plaintiff's claims are not "in connection with" his or putative Class members' sale or purchase of covered securities, but nonetheless contend that Plaintiff's allegations are "sufficient to satisfy SLUSA's 'in connection with the purchase or sale of a covered security' requirement because the alleged misrepresentations 'coincide' with the securities transactions in which *InterPrivate* sold *its stock* to [Legacy] Aeva shareholders." Notice at 12

(emphasis added). But the Supreme Court has held that to meet the "in connection with" requirement, the fraudulent misrepresentations or omissions alleged must be "material to a decision by one or more individuals (*other than a fraudster*) to buy or sell a 'covered security.'" *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387 (2014) (emphasis added). That is, "the 'someone' making that decision to purchase or sell must be a party other than the fraudster. If the only party who decides to buy or sell a covered security as a result of a lie is the liar, that is not a 'connection' that matters." *Id*. at 388.

Legacy Aeva shareholders cannot be said to be victims of Defendants' misrepresentations and omissions. They had already decided to "purchase" the InterPrivate securities prior to the Proxy's issuance by entering into the Merger Agreement and were not provided with the Proxy. Therefore, the Proxy's misrepresentations and omissions cannot be said to have been "material to a decision" by *Legacy Aeva shareholders* to "buy" a "covered security." Thus, Defendants' only argument for application of SLUSA is that *InterPrivate's controlling stockholders, board of directors, and officers* made misrepresentations or omitted material information "in connection with" *InterPrivate's* own sale of covered securities. But, as Defendants are the alleged fraudsters, "this is not a 'connection' that matters," and Plaintiff's claims are not covered by SLUSA, 15 U.S.C. § 78bb. *Troice*, 571 U.S. 388.

Accordingly, removal was improper, and this action must be remanded.

### B.    THE "DELAWARE CARVE-OUT" APPLIES

If the Court concludes that notwithstanding controlling Supreme Court precedent, SLUSA does apply, then remand is proper pursuant to SLUSA's savings clause, often referred to as the "Delaware carve-out." 15 U.S.C. § 78bb(f)(3)(A)(i) and (ii)(II)(b). In adopting SLUSA, Congress noted the need to exempt "shareholder-initiated litigation based on breach of fiduciary duty of disclosure, in connection with certain corporate actions, that is found in the law of some states,

10

most notably Delaware." S. Rep. 105–182, at 6 (May 4, 1998). The Committee on Banking,

Housing and Urban Affairs in authoring SLUSA further noted:

> The Committee is keenly aware of the importance of state corporate law, specifically those states that have laws that establish a fiduciary duty of disclosure. It is not the intent of the Committee in adopting this legislation to interfere with state law regarding the duties and performance of an issuer's directors or officers in connection with a purchase or sale of securities by the issuer or an affiliate from current shareholders or communicating with existing shareholders with respect to voting their shares, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

*Id.* In accord with that goal, SLUSA's savings clause excludes certain "covered class actions" from

its purview noting that "[n]otwithstanding paragraph (1) or (2), a covered class action described in

clause (ii) [the "Delaware carve-out"] of this subparagraph that is based upon the statutory or

common law of the State in which the issuer is incorporated (in the case of a corporation) or

organized (in the case of any other entity) may be maintained in a State or Federal court by a

private party." *Id.* at 78bb(f)(3)(A)(i). SLUSA "carefully exempts from its operation certain class

actions based on the law of the State in which the issuer of the covered security is incorporated."

*Dabit*, 547 U.S. at 85; *see also Alessi v. Beracha*, 244 F. Supp. 2d 354, 357 (D. Del. 2003)

(recognizing "SLUSA also contains a savings clause, known as the 'Delaware carve-out'

exception, which preserves certain 'covered class actions'").

As applicable here, "covered class actions" asserted under state law and brought in the state

of incorporation of the issuer may be maintained in state court where such actions "involve . . .

any recommendation, position, or other communication with respect to the sale of any issuer that

(aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities

of the issuer; and (bb) concerns decisions of such equity holders with respect to voting their

securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal

rights." 15 U.S.C. § 78bb(f)(3)(A)(ii)(II). There can be no dispute that Plaintiff has brought claims

11

based upon the common law of the state where InterPrivate is incorporated (Delaware). *Id.* at §
78bb(f)(3)(A)(i). Defendants also argue that Plaintiff's claims relate to the sale of InterPrivate
securities to Legacy Aeva shareholders. Notice at 6. The only question, therefore, is whether the
Complaint asserts claims concerning a decision covered by 15 U.S.C. § 78bb(f)(3)(A)(ii)(II)(bb).

As alleged in the Complaint, the Proxy, among other things, recommended that Plaintiff
and Class members vote in favor of the Merger and to authorize the shares exchange contemplated
by the Merger Agreement. Compl. ¶¶ 14, 80, 85, 90-91; Proxy at p. 1. Plaintiff's claims, to the
extent they relate to misstatements or omissions, concern a Proxy issued on behalf of the issuer,
InterPrivate, to its stockholders and, "concern[ed] decisions of [InterPrivate's] equity holders with
respect to voting their securities [in favor of or against the Merger], acting in response to a tender
or exchange offer [pursuant to which InterPrivate would issue shares to Legacy Aeva
stockholders], [and] exercising dissenters' rights [in connection with their determination whether
to redeem their shares prior to the Merger]."[4] 15 U.S.C. § 78bb(f)(3)(A)(ii)(II). The allegations in
the Complaint thus squarely fall under the Delaware carve-out, and remand is proper and required.

---

[4] The Proxy was for the purpose of soliciting Plaintiff's and Class members' votes:

> The board of directors of InterPrivate recommends that its stockholders vote "FOR"
> the proposals described in this proxy statement/prospectus/consent solicitation
> statement, and the board of directors of Aeva recommends that its stockholders sign
> and return to Aeva the Written Consent indicating their approval of the Business
> Combination Agreement and the Business Combination.

Proxy at p.1. Further, the Proxy was requesting stockholder action with regard to an "exchange
offer," something that Defendants concede: the "misrepresentations and omissions alleged in the
Complaint were made in connection with the sale of common stock by InterPrivate to existing
Aeva shareholders as part of the merger consideration." Notice at 12. Further, the Proxy explains
the nature of this "exchange offer":

> Each share of Merger Sub Common Stock issued and outstanding immediately
> prior to the Effective Time will be converted into and exchanged for one validly

Defendants' only contention as to why the Delaware carve-out does not apply is that the Complaint "do[es] not allege any claims concerning a shareholders' voting rights." This contention is both inaccurate and incomplete and misstates the carve-out's requirements. The Initial Complaint and Amended Complaint both specifically alleged that Defendants "had an affirmative duty to provide materially accurate and complete information to public stockholders in connection with the redemption decision and Merger vote. [They] failed to do so." Initial Complaint ¶ 83; Compl. ¶ 84. The Amended Complaint further supported this allegation by noting that "[a]pproval of the Merger required an affirmative vote of the majority of InterPrivate's stockholders at the special meeting," and clarified that Plaintiff was looking for a declaration "[f]inding the stockholder vote was not fully informed." Compl. ¶ 80, Prayer for Relief ¶ D. Ultimately, whether or not Plaintiff explicitly set forth claims relating to a stockholder vote, exchange offer, or exercise of dissenters' rights (and he did), Defendants made a recommendation that "concerns decisions of such equity holders" with respect to these stockholder actions, and the Delaware carve-out applies. *Alessi*, 244 F. Supp. 2d at 359.

Although not necessary here, a broad application of the Delaware carve-out has routinely been applied by this Court and others. In *Alessi*, a case before this Court on a motion to remand, the plaintiffs alleged that directors and officers of a Delaware corporation breached their fiduciary duties, including the duty of disclosure, by omitting material information in a proxy soliciting stockholders who held fewer than 100 shares to participate in a buyout share repurchase designed to "reduce the number of small shareholders to facilitate an acquisition." *Id.* at 355. Plaintiff alleged the defendants violated the duty of disclosure by publishing a false and misleading proxy

---

issued, fully paid and nonassessable share of common stock, par value $0.001 per share, of the Surviving Corporation.

Proxy at 118.

13

in connection with the buyout as it did not reveal that the purpose of the buyout was to accomplish a merger. The defendants removed the action to federal court pursuant to SLUSA. The plaintiff sought remand arguing that "the buyout program involved a 'recommendation, position, or other communication; concerning a stockholder's decision to act in response to corporate action," which, she argued, would satisfy the first and third prongs of the Delaware carve-out. *Id.* at 358. Defendants contended that the alleged material omissions were not related to "acting in response to a tender or exchange offer," and thus the Delaware carve-out was not applicable. *Id*. at 358-59. This Court, relying on the legislative history of SLUSA, disagreed, concluding that "such a narrow interpretation of the statute is unwarranted." *Id*. at 359. The Court observed:

> [T]he gravamen of plaintiff's complaint is the breach of defendants' duty of disclosure. As recognized in the Committee report, Delaware has well developed and established laws regarding the fiduciary duty of disclosure of corporate directors with respect to shareholders. Therefore, the court concludes that this is exactly the type of action Congress intended to exempt from the preemption provisions of SLUSA. Furthermore, adopting defendants' narrow interpretation of the statutory language would permit corporations and directors to evade liability by structuring their transactions to fall outside the traditional definition of a tender or exchange offer. Permitting such a manipulation would frustrate the purpose of § 77bb(f)(3)(A)(ii) and render the second Delaware carve-out exception virtually meaningless.

*Id*. (citing S. Rep. 105–185, at 6 (May 4, 1998). Here, Plaintiff's claims are broader than mere duty of disclosure claims, but the same reasoning applies. The Proxy constituted a "recommendation, position, or other communication" with respect to the "sale" (according to Defendants) of InterPrivate stock to Legacy Aeva. *Id.* The Proxy concerned "decisions of [InterPrivate] equity holders acting in response to a tender or exchange offer,"[5] exercising dissenters' rights, and a vote. *Id.* As in *Alessi*, the Delaware carve-out requires remand.

---

[5] *See also In re Multiplan*, 268 A.3d at 815 (analogizing stockholder redemption decisions and a tender offer).

## II.    DEFENDANTS WAIVED THEIR RIGHT TO REMOVAL

The burden to establish federal jurisdiction is a "high one when seeking to avoid a forum selection clause." *E.I. Du Pont*, 2011 WL 776211 at \*2. This is because there is a "strong presumption" in favor of enforcement. *ING Bank*, 2010 WL 3907825, at \*1. Forum selection clauses are "*prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Where the contractual forum selection provision is "unaffected by fraud, undue influence, or overweening bargaining power, such as that involved here[; it] should be given full effect." *Id.* at 12-13. By voluntarily entering into a forum selection agreement, the parties waive their right to removal. *See Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1217 (3d Cir. 1991) (collecting cases remanding on this basis). "[E]nforcement of a waiver of the right to remove is a proper ground for remand." *Id.* at 1219.

When evaluating whether a particular forum selection clause constitutes a waiver of the right to remove, the Court must apply ordinary principles of contract construction. *Definition Servs., Inc. v. GVA Cap. Ltd.*, No. 1:21-CV-00741, 2021 WL 6846201, at \*2 (D. Del. Nov. 17, 2021). In particular, "the district court must look to the 'plain and ordinary meaning' of the forum selection clause to determine whether it amounted to a waiver of the right to remove. *Id.* (citing and quoting *New Jersey v. Merrill Lynch & Co., Inc.*, 640 F.3d 545, 548 (3d Cir. 2011) (citing *Buono Sales, Inc. v. Chrysler Motors Corp.*, 449 F.2d 715, 721 (3d Cir. 1971))). The inclusion of mandatory language in a forum selection provision constitutes waiver.

Thus, here, even if SLUSA applied and the Delaware carve-out did not, Defendants here have waived their right to remove Plaintiff's claims to federal court. InterPrivate's Certificate of Incorporation included a forum selection clause that mandates that any claims for breach of

15

fiduciary duty against its directors, officers, and stockholders be brought in the Delaware Court of Chancery. Specifically, InterPrivate's Certificate of Incorporation, in relevant part, states:

> Unless the Corporation consents in writing to the selection of an alternative forum, the *Court of Chancery of the State of Delaware* <u>**shall be**</u> *the sole and exclusive forum* for any stockholder (including a beneficial owner) to bring . . . (ii) *any action asserting a claim of breach of a fiduciary duty owed by any director, officer* or other employee of the Corporation to the Corporation *or the Corporation's stockholders*, [or] (iii) any action asserting a claim against the Corporation, its directors, officers or employees arising pursuant to any provision of the DGCL or this Amended and Restated Certificate or the By-Laws . . . .

Compl. ¶ 17 (emphases added). This Court has repeatedly held that nearly identical language constitutes a waiver of removal. *See InterDigital, Inc. v. Wistron Corp.*, No. CV 15-478-LPS, 2015 WL 4537133, at *1 (D. Del. June 18, 2015) (holding that forum selection provision that provided that the parties "'irrevocably consent to exclusive jurisdiction and venue of the state and federal courts in the State of Delaware'—constitute[d] a waiver of the right to remove to federal court if a party files suit in a Delaware state court"); *E.I. Du Pont*, 2011 WL 776211, at *2 ("The Parties hereby reciprocally and irrevocably waive in advance any and all objections to the Delaware courts as forums based upon any question of venue; the doctrine of *forum non conveniens*; the present or future pendency of any other case or proceeding elsewhere; the compulsory counterclaim rule or any other doctrine, statute, rule of practice or fact."); *Fleming & Hall, Ltd. v. Cope*, 30 F. Supp. 2d 459 (D. Del. 1998) (remanding in light of a contractual forum selection provision).

Finally, as stated by the Supreme Court, "SLUSA does not actually pre-empt any state cause of action" and does not rob state courts of jurisdiction. *Dabit*, 547 U.S. at 87, and that SLUSA *may* apply to particular claims or allegations (and it does not) does not render void a forum selection clause.

Defendants authored the forum selection provision in InterPrivate's Certificate of Incorporation and inherently and explicitly agreed to its terms by becoming directors, officers, and

16

stockholders of InterPrivate. Accordingly, they waived their right to removal, and this Action should be remanded independently on this basis.

## CONCLUSION

For the reasons set forth herein, this action should be remanded to the Delaware Court of Chancery for further proceedings.

Dated: May 15, 2024

**OF COUNSEL:**

**GRANT & EISENHOFER P.A.**
David Wissbroecker
123 S. Justison Street, 7th Floor
Wilmington, DE 19801
(302) 622-7000

**BRONSTEIN, GEWIRTZ &
   GROSSMAN, LLC**
Peretz Bronstein
Eitan Kimelman
60 East 42nd Street, 46th Floor
New York, NY 10165
(212) 697-6484

*Counsel for Plaintiff Louis Smith*

**GRANT & EISENHOFER P.A.**

*/s/ Kelly L. Tucker*
Michael J. Barry (#4368)
Kelly L. Tucker (#6382)
123 S. Justison Street, 7th Floor
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100

*Counsel for Plaintiff Louis Smith*

17