Michael J. Barry (#4368)
Kelly L. Tucker (#6382)
**GRANT & EISENHOFER P.A.**
123 S. Justison Street, 7th Floor
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100

*Counsel for Plaintiff Louis Smith*

[ADDITIONAL COUNSEL IN SIGNATURE BLOCK]

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE**

| | |
|---|---|
| LOUIS SMITH,<br><br>         Plaintiff,<br><br>    v.<br><br>AHMED M. FATTOUH, BRANDON BENTLEY, JEFFREY HARRIS, PIETRO CINQUEGRANA, MATTHEW LUCKETT, ALAN PINTO, BRIAN Q. PHAM, MINESH K. PATEL, INTERPRIVATE ACQUISITION MANAGEMENT LLC, AND INTERPRIVATE LLC,<br><br>         Defendants. | No. 1:24-cv-00484-GBW<br><br>**PUBLIC VERSION:  DECEMBER 11, 2024** |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................... iii

I.    INTRODUCTION ............................................................................................... 1

II.   BACKGROUND ................................................................................................. 3

    A.    DEFENDANTS TAKE INTERPRIVATE PUBLIC ................................................ 3

    B.    DEFENDANTS MERGE WITH LEGACY AEVA ................................................. 5

    C.    PLAINTIFFS INVESTIGATE AND FILE THE COMPLAINT ................................. 6

    D.    THE PARTIES ENGAGE IN A MEDIATION AND REACH AGREEMENT ON THE SETTLEMENT TERMS ........................................................................ 8

III.   THE PROPOSED SETTLEMENT .................................................................... 9

IV.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ...................................................................................................... 10

    A.    STANDARDS FOR PRELIMINARY APPROVAL OF A PROPOSED SETTLEMENT ........... 10

    B.    CLASS CERTIFICATION IS APPROPRIATE ...................................................... 10

        1.    The Class Satisfies Rule 23(a) .................................................... 11

            (a)    The Class Is So Numerous That Joinder of All Members Is Not Practical ........................................................................ 11

            (b)    Questions of Law Are Common to Class Members ................... 11

            (c)    Plaintiffs' Claims Are Typical of the Class ............................. 12

            (d)    The Class's Interests Are Fairly and Adequately Protected .......... 12

        2.    The Class Satisfies Rule 23(b)(3) ............................................... 12

    C.    THE SETTLEMENT IS FAIR ......................................................................... 13

    D.    THE SETTLEMENT SATISFIES THE RULE 23(E)(2) FACTORS ............................ 15

        1.    Plaintiffs and Plaintiffs' Counsel Adequately Represented the Class .......................................................................................... 15

        2.    The Settlement Was Negotiated at Arm's Length ........................ 15

        3.    The Proposed Settlement Is Adequate in Light of the Four Rule 23(e)(2)(C) Factors ...................................................................... 16

            (a)    Costs, Risks, and Delay of Trial and Appeal ............................. 16

            (b)    The Proposed Method for Distributing Relief Is Effective ............ 18

            (c)    Attorneys' Fees and Expenses ................................................. 19

            (d)    The Parties Have No Additional Agreement Other than an Agreement to Address Requests for Exclusion ......................... 19

i

(e)      The Settlement Treats Class Members Equitably..........................19

V.      THE COURT SHOULD APPROVE THE NOTICE PLAN.............................................20

VI.     CONCLUSION..................................................................................................................21

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..................................................................................................13

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994)..........................................................................................12

*Bredhenner v. Liberty Travel, Inc.*,
    2011 WL 1344745 (D.N.J. Apr. 8, 2011) .................................................................16

*Burbige, et al. v. ATI Physical Therapy*,
    C.A. 1:21-cv-04349 ...................................................................................................18

*Bushansky v. GigAcquisition4, LLC*,
    2024 WL 4449788 (Del. Ch. Oct. 8, 2024) ..............................................................18

*In re Del Monte Foods Co. S'holders Litig.*,
    2010 WL 5550677 (Del. Ch. Dec. 31, 2010).............................................................15

*In re Dell Techs. Inc. Class V S'holders Litig.*,
    300 A.3d 679 (Del. Ch. 2023)....................................................................................17

*Delman v. GigAcquisitions3, LLC*,
    288 A.3d 692 (Del. Ch. 2023)......................................................................................2

*Delman v. Riley*,
    2024 WL 4547452 (Del. Ch. Oct. 17, 2024) ............................................................18

*Du v. Blackford*,
    2018 WL 4691046 (D. Del. Sept. 28, 2018).......................................................10, 12

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010).......................................................................................10

*Farzad v. Trasimene Capital, FT, LP II*,
    C.A. No. 2023-0193-JTL (Del. Ch. Jan. 30, 2024) (TRANSCRIPT) ........................2

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) .............................................................................. *passim*

*In re Finserv Acquisition Corp.*,
    C.A. No. 2022-0755-PAF (Del. Ch. Nov. 1, 2023) (TRANSCRIPT)..........................2

*In re FinServ Acquisition Corp. SPAC Litig.*,
    2024 WL 4472073 (Del. Ch. Oct. 10, 2024) ............................................................18

iii

*In re Google, Inc. Cookie Placement Consumer Privacy Litig.*,
    2023 WL 4420431 (D. Del. July 10, 2023) ................................................................11

*In re Heckmann Corp. Sec. Litig.*,
    2013 WL 2456104 (D. Del. June 6, 2013)...................................................................13

*In re Hennessy Cap. Acquisition Corp. IV S'holder Litig.*,
    318 A.3d 306 (Del. Ch. 2024)....................................................................................17

*In re Ins. Brokerage Antitrust Litig.*,
    282 F.R.D. 92 (D.N.J. 2012)......................................................................................16

*Katz v. Fattouh*,
    C.A. No. 2024-0598-LWW (Del. Ch.) .........................................................................1

*In re Kensington-Quantumscape De-SPAC Litig.*,
    C.A. 2022-0721-JTL (Del. Ch. Feb. 21, 2024) (TRANSCRIPT)..................................2

*Laidlaw v. GigAcquisitions2, LLC*,
    2023 WL 2292488 (Del. Ch. Mar. 1, 2023)..................................................................2

*Laidlaw v. GigAcquisitions2, LLC*,
    C.A. No. 2021-0821-LWW (Del. Ch. Oct. 9, 2024)....................................................18

*In re Lordstown Motors Corp.*,
    C.A. No. 2021-1066-LWW (Del. Ch. July 5, 2024).....................................................17

*Malork v. Anderson*,
    C.A. No. 2022-0260-PAF (Del. Ch. July 17, 2023) (TRANSCRIPT) .....................................2

*In re Multiplan Corp. S'holders Litig.*,
    2023 WL 2329706 (Del. Ch. Mar. 1, 2023)..................................................................17

*In re MultiPlan Corp. S'holders Litig.*,
    268 A.3d 784 (Del. Ch. 2022)......................................................................................2

*In re Nat'l Football League Players Concussion Injury Litig.*,
    775 F.3d 570, 581 (3d Cir. 2014) ...............................................................................10

*Newbold v. McCaw*,
    C.A. No. 2022-0439-LWW (Del. Ch. July 21, 2023) (TRANSCRIPT).................................2

*In re Nikola Corp. Derivative Litig.*,
    C.A. No. 2022-0023-KSJM (Del. Ch. Apr. 9, 2024) (TRANSCRIPT)..................................2

*Or. Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*,
    2024 WL 98387 (D. Colo. Jan. 1, 2024)......................................................................15

iv

*In re Processed Egg Prods. Antitrust Litig.*,
   2014 WL 828083 (E.D. Pa. Feb. 28, 2014) ...........................................................14

*Resignio v. Statoil USA Onshore Props., Inc.*,
   2024 WL 4249491 (3d Cir. Sept. 20, 2024) ...........................................................10

*Rodriguez v. Nat'l City Bank*,
   726 F.3d 372 (3d Cir. 2013)...................................................................................11

*Roofer's Pension Fund v. Papa*,
   333 F.R.D. 66 (D.N.J. 2019)..................................................................................13

*Smith v. Suprema Specialties, Inc.*,
   2007 WL 1217980 (D.N.J. Apr. 23, 2007) .............................................................13

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001)...................................................................................11

*Tennille v. W. Union Co.*,
   785 F.3d 422 (10th Cir. 2015) ...............................................................................20

*In re Viopharma Inc. Sec. Litig.*,
   2016 WL 312108 (E.D. Pa. Jan. 25, 2016)............................................................16

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)...................................................................................12

*Weisfeld v. Sun Chem. Corp.*,
   210 F.R.D. 136 (D.N.J. 2002), *aff'd*, 84 F. App'x 257 (3d Cir. 2004) ...................13

*Yu v. RMG Sponsor, LLC*,
   2024 WL 4547457 (Del. Ch. Oct. 18, 2024) ..........................................................18

**Statutes**

8 *Del. C* § 220 ...............................................................................................................2

15 U.S.C. §78...........................................................................................................8, 20

**Other Authorities**

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice
   and Procedure* §1788 (2d ed. 1986) ......................................................................13

Fed. R. Civ. P. 23................................................................................................ *passim*

Louis Smith, plaintiff in this action (the "Federal Action"), and Todd Katz, plaintiff in *Katz v. Fattouh*, C.A. No. 2024-0598-LWW (Del. Ch.) (the "State Action," with the Federal Action, the "Actions") (collectively, "Plaintiffs"), respectfully submit this Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement.[1]

## I.   INTRODUCTION

The Actions arise out of Defendants' alleged breaches of fiduciary duty to the Class, including issuing false and misleading statements and omissions that deprived Plaintiffs and the class of InterPrivate public stockholders of their ability to make a fully-informed decision on how to vote in connection with the Merger and whether to redeem their InterPrivate shares in connection with InterPrivate's merger (the "Merger") with Aeva, Inc. ("Legacy Aeva"). By this Motion, Plaintiffs request that the Court: (1) enter the proposed Preliminary Approval Order; (2) certify the Class for settlement purposes; (3) order the dissemination of notice to the Class; and (4) set a time for the Settlement Hearing.

Following an extensive investigation of public information and documents produced in a confidential document demand process, the filing of the Complaint in the Delaware Court of Chancery, Defendants' removal of the Federal Action to this Court, and arm's-length mediation and settlement discussions overseen by an experienced mediator, Greg Danilow ("Mr. Danilow") of Phillips ADR Enterprises, Plaintiffs have achieved a settlement with Defendants that provides for a $14 million cash payment.  By any measure, the Settlement is an excellent result for the Class.

---

[1] Unless otherwise stated or defined, all capitalized terms used herein have the meanings provided in the Stipulation of Settlement (the "Stipulation"), submitted herewith, or the Amended Verified Class Action Complaint (the "Complaint") in this Action.  All citations are omitted and emphasis is added, unless otherwise indicated.  All "¶" or "¶¶" references are to the Complaint.

Plaintiffs were well informed of the strengths and weaknesses of their claims and defenses when negotiating the Settlement. Before filing the Actions, Plaintiffs received over 2,100 pages pursuant to Demands to Inspect Books and Records Pursuant to 8 *Del. C* § 220 (the "220 Demands"). After reviewing these materials, Plaintiffs believed they had strong claims and filed the Actions in the Delaware Court of Chancery. The Delaware Court of Chancery has uniformly held that "de-SPAC" transactions, such as the Merger, are subject to Delaware's most onerous and exacting standard of review—entire fairness.[2]

While the facts and standards at issue were strong, Plaintiffs also had legitimate concerns. For example, the Court could deny Plaintiffs' motion for remand, resulting in dismissal of the Federal Action. Plaintiffs were also concerned about potential reduction in damages based on post-Merger stock sales above the $10.07 per share Redemption Price. Despite these risks, Plaintiffs were able to secure a settlement that significantly benefits the Class.

Accordingly, the Settlement easily satisfies the standards for preliminary approval—it is a fair, reasonable, and adequate resolution for the Class and pursuant to the terms of the Stipulation, and Federal Rule of Civil Procedure ("Rule") 23(c)(2)(B)(v), all members of the Class will have

---

[2] *See Delman v. GigAcquisitions3, LLC*, 288 A.3d 692, 713–14 (Del. Ch. 2023) ("*Gig3*") (applying the entire fairness standard in a similarly conflicted de-SPAC transaction); *In re MultiPlan Corp. S'holders Litig.*, 268 A.3d 784, 808 (Del. Ch. 2022); *Laidlaw v. GigAcquisitions2, LLC*, 2023 WL 2292488, at *7–*10 (Del. Ch. Mar. 1, 2023) ("*Gig2*"); *In re XL Fleet (Pivotal) S'holder Litig.*, Consol. C.A. No. 2021-0808-KSJM (Del. Ch. June 9, 2023) (TRANSCRIPT) ("*XL Fleet* Tr.") at 23, 28; *In re Finserv Acquisition Corp.*, C.A. No. 2022-0755-PAF (Del. Ch. Nov. 1, 2023) (TRANSCRIPT) ("*Finserv* Tr.") at 14; *Newbold v. McCaw*, C.A. No. 2022-0439-LWW (Del. Ch. July 21, 2023) (TRANSCRIPT) ("*Astra Space* Tr.") at 21–23; *Malork v. Anderson*, C.A. No. 2022-0260-PAF (Del. Ch. July 17, 2023) (TRANSCRIPT) ("*Hyzon* Tr.") at 26; *In re Kensington-Quantumscape De-SPAC Litig.*, C.A. 2022-0721-JTL (Del. Ch. Feb. 21, 2024) (TRANSCRIPT) ("*Quantumscape* Tr.") at 59; *In re Nikola Corp. Derivative Litig.*, C.A. No. 2022-0023-KSJM (Del. Ch. Apr. 9, 2024) (TRANSCRIPT) ("*Nikola* Tr.") at 25–26; *Farzad v. Trasimene Capital, FT, LP II*, C.A. No. 2023-0193-JTL (Del. Ch. Jan. 30, 2024) (TRANSCRIPT) ("*Paysafe* Tr.") at 5. All transcripts are submitted herewith in a compendium.

an opportunity to opt out or object to the Settlement.  Class Members who do not timely exclude their Eligible Shares from the Settlement will be treated equitably and will receive a pro rata share of the monetary relief based on the terms of the Plan of Allocation.  The Settlement balances the objective of securing the highest possible recovery with recognition of the substantial risks and costs of continued litigation, the risks related to New Aeva's financial condition, and the risk that, as in any complex case, the Class could receive nothing, or a sum far less than the Settlement Amount, after a trial and any appeals.

Plaintiffs seek preliminary approval so that notice may be disseminated to the Class and a Settlement Hearing and other Settlement-related dates may be scheduled.  At the Settlement Hearing, the Court will make a final determination as to: (i) whether the Settlement is fair, reasonable, and adequate as a whole; (ii) whether the Plan of Allocation should be approved; and (iii) a proposed award of attorneys' fees and expenses to Plaintiffs' Counsel.

## II.    BACKGROUND[3]

### A.    DEFENDANTS TAKE INTERPRIVATE PUBLIC

As alleged in the complaint, InterPrivate was a publicly traded SPAC, incorporated in Delaware on August 16, 2019, for the sole purpose of entering into a business combination with another company, commonly referred to as a de-SPAC merger.  ¶¶ 1, 2, 32.  Like every SPAC, InterPrivate went public through an initial public offering ("IPO") and placed the proceeds from the IPO in a trust for the benefit of its public stockholders.  ¶ 2.  InterPrivate's public stockholders had the right to redeem all or a portion of their stock should InterPrivate enter into a proposed business combination or they could invest their funds in the post-combination company.  *Id*.  If

---

[3] This background section is drawn from the allegations in the complaint. Defendants challenge the validity of these allegations in their entirety.

InterPrivate was not able to consummate a business combination within a 24-month deadline as required by its corporate charter, InterPrivate would have liquidated, and public stockholders would have received their initial investment of $10.00 per share plus interest. *Id.*

Prior to the IPO, InterPrivate sold an aggregate of 5,750,000 Founder Shares to the Sponsor in exchange for $25,000, or approximately $0.004 per share. ¶¶ 4, 33. Fattouh beneficially held the Sponsor's Founder Shares. ¶ 20. Following a dividend and a forfeiture of certain Founder Shares in connection with the IPO, the Sponsor and Fattouh held 6,037,500 Founder Shares at the time of the Merger.[4] *Id.* In connection with the IPO, the Sponsor also purchased 501,081 units for $10.00 per unit ("Private Placement Unit"). ¶ 5. Each Private Placement Unit consisted of one share of InterPrivate Class A common stock ("Private Placement Share") and one-half of one warrant ("Private Placement Warrant"). *Id.*

The Sponsor waived its redemption rights as to the Founder Shares and Private Placement Shares, and those shares were not entitled to liquidating distributions from the trust. *Id.* Thus, absent the close of a business combination, the Founder Shares and Private Placement Shares would be worthless. *Id.* Further, the Private Placement Warrants could not be exercised until 30 days following the close of a business combination, rendering them worthless if Defendants could not push stockholders towards the close of a merger. *Id.* As alleged in the complaint, if a merger did not close, Defendants would be left with nothing, and Defendants would have lost their entire investments.

In January 2020, Fattouh, Bentley, Harris, and Cinquegrana were appointed to the Board. ¶ 35. Luckett was placed on the Board after the IPO. ¶ 45. Also, in January 2020, Fattouh, Pinto, Bentley, Pham, and Patel were retained as InterPrivate officers. ¶ 35. Shortly thereafter, the

---

[4] The Sponsor, Fattouh, and Bentley are named in the Complaint as the "Controller Defendants."

Sponsor allocated 30,000 Founder Shares to Cinquegrana, Harris, and Luckett.  ¶¶ 44, 45, 46.

Harris received an additional 100,000 Founder Shares and 12,500 Private Placement Warrants for

investing $250,000 in the Sponsor.  ¶¶ 6, 44.  Similarly, Luckett received 20,000 Founder Shares

and 2,500 Private Placement Warrants for investing $50,000 in the Sponsor.  ¶¶ 6, 45.

The complaint alleges that the InterPrivate directors and officers had extensive financial

and business relationships.  Fattouh founded and controlled three other SPACs, InterPrivate II

Acquisition Corp., InterPrivate III Financial Partner Inc., and InterPrivate IV InfraTech Partners

Inc.  ¶ 20.  He controls these SPACs through defendants InterPrivate LLC ("IP LLC") and

InterPrivate Acquisition Partners ("IPAP"), of which he is the founder and CEO.  *Id*.  Other than

Cinquegrana, each of the other officer and director defendants have a direct relationship with

Fattouh, IP LLC, and IPAP through these SPACs as officers and/or directors, with material

financial interests.  ¶¶ 21-23, 25-27.

On February 3, 2020, InterPrivate went public through its IPO.  ¶ 36.  In the IPO,

InterPrivate sold 21,000,000 "Public Units" to public investors at a price of $10.00 per share.  *Id.*

Each Public Unit consisted of one share of Class A common stock and one-half of one warrant.

*Id*.  A week after the IPO, InterPrivate generated additional trust proceeds of $31.5 million through

the sale of an additional 3.15 million Public Units, placing a total of $241,500,000 in the trust.

¶ 37.  InterPrivate had two years to find a business combination partner or to liquidate.  ¶ 40.

### B.   DEFENDANTS MERGE WITH LEGACY AEVA

After InterPrivate went public, the Controller Defendants allegedly rushed to secure a

merger partner.  In September 2020, the Controller and Officer Defendants began discussions with

Legacy Aeva.  ¶ 52.  Almost immediately, InterPrivate and Legacy Aeva exchanged various letters

of intent and executed a final version on September 25, 2020.  ¶¶ 61-65.

The Board did not meet for the first time to discuss the Merger until after InterPrivate executed the letter of intent and agreed to the material terms regarding the valuation of Legacy Aeva. ¶ 65. The Board approved the Merger on November 1, 2020. ¶ 78. InterPrivate and Legacy Aeva entered into the Merger Agreement and announced the Merger on November 2, 2020. ¶ 79.

On February 16, 2021, InterPrivate issued and disseminated the allegedly materially misleading Proxy to InterPrivate's public stockholders. ¶ 80. The Proxy included the Board's recommendation that stockholders vote in favor of the Merger and set the stockholder vote for March 11, 2021. *Id.* The Proxy also informed stockholders of their right to redeem their shares for approximately $10.07 per share prior to the Merger. *Id*. Based on the Board's recommendation, and the information contained in, or omitted from, the Proxy, a majority of the public stockholders voted to approved the Merger, and the Merger closed. ¶ 81. Stockholders redeemed only 30,874 shares of InterPrivate Class A common stock.

On March 21, 2021, the first trading day for New Aeva stock, it closed at $16.16 per share. As of this date, the Sponsor's Founder Shares would have netted Defendants approximately ███ ███, a return of over ██████ of the Sponsor's $25,000 investment. ¶ 83.

## C. PLAINTIFFS INVESTIGATE AND FILE THE COMPLAINT

On February 27, 2023, and September 20, 2023, Plaintiffs served the 220 Demands. New Aeva produced 2,111 pages in 60 documents, which included Board minutes, materials and presentations, and certain due diligence information provided to InterPrivate and the Board (the "220 Documents").

The 220 Documents included a presentation (the "Legacy Aeva Presentation") ███

███████████████████████████

███████████████████████████

███████████████████████████

6

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

The 220 Documents included additional presentation materials provided to the Board by InterPrivate management (the "Management Presentation") █████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

During Plaintiffs' investigation process, Plaintiffs also determined that the Proxy allegedly failed to disclose the net cash per share underlying InterPrivate shares that would be exchanged in the Merger.  While the Proxy implied that the value of InterPrivate shares being used as merger consideration was $10.00 per share, in fact, as alleged in the complaint, there was less than $8.60 underlying each InterPrivate share, even before any redemptions.

Plaintiff Smith drafted and filed his Verified Class Action Complaint (the "Initial Complaint") on March 7, 2024, in the Delaware Court of Chancery, which alleged that Defendants impaired stockholders' redemption decisions in a breach of their duty of loyalty and were unjustly enriched, in part, by failing to disclose material information and/or making materially misleading statements in the Proxy.  As alleged in the Initial Complaint, the Proxy: (i) omitted material information as to the value of InterPrivate shares exchanged in the Merger; (ii) ███████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ ¶¶ 84-118.

On April 10, 2024, plaintiff Smith filed the Complaint in the Delaware Court of Chancery. On April 15, 2024, Defendants removed the Federal Action to the Court pursuant to the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb.  Plaintiff Smith filed a motion to remand on May 15, 2024.

On June 3, 2024, plaintiff Katz filed his Verified Class Action Complaint in the Delaware Court of Chancery (the "Katz Complaint").  The Katz Complaint alleged essentially the same claims as set forth in the Complaint.

**D.    THE PARTIES ENGAGE IN A MEDIATION AND REACH AGREEMENT ON THE SETTLEMENT TERMS**

On June 12, 2024, the Parties participated in a full-day mediation (the "Mediation") before Greg Danilow, Esq., of Phillips ADR Enterprises.  Following extensive arm's-length negotiations, the Parties agreed in principle to settle the Actions for $14 million.  Over the next few weeks, the

Parties engaged in further arm's-length negotiations concerning the Settlement terms, which were subsequently recorded in the Term Sheet and fully executed on July 2, 2024.

## III.   THE PROPOSED SETTLEMENT

The Settlement resolves the claims against all Defendants in the Actions.  The Stipulation provides that Defendants shall pay, or cause to be paid, into the Settlement Fund: (i) $2.8 million in cash within five (5) business days following preliminary approval of the Settlement; and (ii) $11.2 million in cash within thirty (30) days of the Court's hearing on the final approval of the Settlement.  Stipulation, ¶ 5(a).  The Settlement Fund shall be applied as follows: (i) to pay Notice and Administration Costs; (ii) to pay taxes and Tax Expenses; (iii) to pay any Fee and Expense Award; and (iv) to distribute the Net Settlement Fund to Class Members pursuant to the Plan of Allocation.  *Id.*, ¶ 5(d).

As proposed in the Plan of Allocation: (i) all Eligible Class Members will receive $0.10 for each share of InterPrivate Class A common stock held at the close of the market on March 9, 2021 ("Eligible Share"); (ii) each Eligible Class Member that sold InterPrivate Class A common stock or Aeva common stock after the close of market on March 9, 2021 through March 7, 2024 at a price of less than $10.07 per share will receive pro rata damages per Eligible Share of $10.07 minus the sale price; and (iii) each Eligible Class Member that continued to hold Aeva common stock as of the close of the market on March 7, 2024 will receive pro rata damages per Eligible Share of $10.07 minus $1.19.  *See* Exhibit B.

In exchange for the benefits provided, Class Members will release Defendants as provided for in ¶ 1(ee) and ¶ 1(ii) of the Stipulation.

## IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    STANDARDS FOR PRELIMINARY APPROVAL OF A PROPOSED SETTLEMENT

As the Third Circuit has held, there is "a 'strong presumption in favor of voluntary settlement agreements' that 'promote the amicable resolution of disputes,' conserve judicial resources, and benefit the parties by 'avoiding the costs and risks of a lengthy and complex trial.'" *Resignio v. Statoil USA Onshore Props., Inc.*, 2024 WL 4249491, at *5 (3d Cir. Sept. 20, 2024) (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010)). "This presumption is especially strong in 'class actions.'" *Verizon Wireless*, 609 F.3d at 595.

In the Third Circuit, at the preliminary approval stage, "the court must determine that the settlement class meets the requirements for class certification under Rule 23(a) and (b), and must separately determine that the settlement is fair to that class under Rule 23(e)." *Du v. Blackford*, 2018 WL 4691046, at *2 (D. Del. Sept. 28, 2018) (citing *In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d 570, 581 (3d Cir. 2014)). "If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement to afford them an opportunity to be heard, opt out of the class, or object to the settlement." *Du*, 2018 WL 4691046, at *3. Following notice, the Court "proceeds with the second hearing, the formal 'fairness hearing' as required by Rule 23(e)(2)," to determine whether the settlement is "'fair, reasonable, and adequate.'" *Id.*

### B.    CLASS CERTIFICATION IS APPROPRIATE

For preliminary approval, the Court must make an initial determination that class certification is appropriate for issuing the Notice. *Nat'l Football League*, 775 F.3d at 586. With respect to Rule 23(a), Plaintiffs must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the

10

representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

With respect to Rule 23(b), the Court should evaluate whether the Class is appropriate pursuant to Rule 23(b)(3) because "the class seeks monetary damages" which "requires that 'questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *In re Google, Inc. Cookie Placement Consumer Privacy Litig.*, 2023 WL 4420431, at \*4 (D. Del. July 10, 2023); Fed. R. Civ. P. 23(b)(3).

### 1. The Class Satisfies Rule 23(a)

#### (a) The Class Is So Numerous That Joinder of All Members Is Not Practical

The numerosity requirement of Rule 23(a)(1) may be satisfied "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). As of the Redemption Deadline, March 9, 2021, there were 24,119,126 non-redeemed shares of InterPrivate common stock outstanding. Joinder of the likely thousands of holders of millions of shares is not practical, and numerosity is satisfied.

#### (b) Questions of Law Are Common to Class Members

Commonality require that Plaintiffs "'share at least one question of fact or law with the grievances of the prospective class.'" *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013). Here, common questions of fact or law include whether Defendants: (i) breached their fiduciary duties by impairing stockholder redemption rights; (ii) failed to disclose material information and/or made materially misleading statements in the Proxy in connection with Merger; (iii) undertook an unfair Merger process at an unfair price; (iv) unjustly enriched themselves by

11

securing unique financial benefits to the detriment of public stockholders; and (v) injured Plaintiffs and Class Members through their conduct.

### (c)    Plaintiffs' Claims Are Typical of the Class

The inquiry into typicality is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994).  Plaintiffs are similarly situated to the other unaffiliated non-redeemers of InterPrivate common stock and their claims "arise from . . . the alleged wrongful conduct on the part of" the Defendants.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004).

### (d)    The Class's Interests Are Fairly and Adequately Protected

There is no divergence of interest between Plaintiffs and absent Class Members.  Moreover, the recovery achieved demonstrates that Plaintiffs' interests were aligned with those of absent Class Members and is likewise indicative of the competence and effectiveness of Plaintiffs' Counsel.  *See Du*, 2018 WL 4691046, at *5 ("[T]he Court concludes that Plaintiff's counsel … have substantial experience working on behalf of stockholders of Delaware corporations and are well-qualified to represent the Class … they frequently litigate breach of fiduciary claims and have the necessary [experience] and knowledge to identify the underlying wrongdoing, bring the litigation in a representative capacity, and negotiate the proposed settlement.").

### 2.    The Class Satisfies Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The Class satisfies these requirements.  "The focus of

the predominance inquiry is on liability, not damages." *Smith v. Suprema Specialties, Inc.*, 2007 WL 1217980, at *9 (D.N.J. Apr. 23, 2007) (citing cases). When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1788 at 528 (2d ed. 1986). Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class. *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 141 (D.N.J. 2002) ("The requirement that common questions of law or fact predominate over individual issues does not mean that the existence of individual issues defeats certification …"), *aff'd*, 84 F. App'x 257 (3d Cir. 2004). Here, if every Class Member brought an individual action, each plaintiff would be required to demonstrate the same omissions or misrepresentations to prove liability. Thus, the Actions are examples of the principle that the predominance requirement is "readily met" in stockholder class action litigation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Rule 23(b)(3) also requires that a class action would be a superior method of adjudicating Plaintiffs' and the Class Members' claims. Superiority "is easily satisfied in [stockholder] cases where 'there are many individual plaintiffs who suffer damages too small to justify a suit against a large corporate defendant.'" *In re Heckmann Corp. Sec. Litig.*, 2013 WL 2456104, at *8 (D. Del. June 6, 2013); *see also Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 78 (D.N.J. 2019).

### C. THE SETTLEMENT IS FAIR

Under Rule 23(e)(1)(B), the issue to be decided upon a motion for preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and

(ii) certify the class for purposes of judgment on the proposal."[5]  Fed. R. Civ. P. 23(e)(1)(B).  In evaluating a class action settlement under Rule 23(e)(2), courts should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

> These factors overlap with those set forth in *Girsh v. Jepson*, which include:

> "(1) the complexity, expense and likely duration of the litigation …; (2) the reaction of the class to the settlement …; (3) the stage of the proceedings and the amount of discovery completed …; (4) the risks of establishing liability …; (5) the risks of establishing damages …; (6) the risks of maintaining the class action through the trial …; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery …; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation … "

521 F.2d 153, 157 (3d Cir. 1975) (ellipses in original).  It has long been the case that "[t]he preliminary approval determination requires the Court to consider whether '(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'"  *In re Processed Egg Prods. Antitrust Litig.*, 2014 WL 828083, at *2 (E.D. Pa. Feb. 28, 2014) (quoting *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003)).  These factors warrant preliminary approval here.

---

[5] As noted above, the Parties have stipulated to class certification for purposes of this Settlement.

### D.   THE SETTLEMENT SATISFIES THE RULE 23(E)(2) FACTORS

#### 1.   Plaintiffs and Plaintiffs' Counsel Adequately Represented the Class

Rule 23(e)(2)(A) is satisfied because Plaintiffs and Plaintiffs' Counsel have diligently prosecuted the Actions, including, among other things: (i) investigating the relevant factual events underlying the Actions; (ii) conducting discovery in the 220 Demands that included production and extensive review of the 220 Documents; (iii) drafting and filing the Initial Complaint, the Complaint, and the Katz Complaint; (iv) drafting and filing the motion to remand; and (v) participating in the mediation process.  In short, Plaintiffs have shown adequacy "by closely monitoring and participating in [the] [Actions] from the outset through resolution."

Moreover, Plaintiffs' Counsel have significant experience prosecuting complex shareholder litigation such as the Actions.  *See, e.g.*, *In re Del Monte Foods Co. S'holders Litig.*, 2010 WL 5550677 (Del. Ch. Dec. 31, 2010) ("Ultimately, the most important factor when appointing lead counsel is the degree to which the attorneys will provide effective representation for the class going forward. . . G&E's track record stands out."); *Or. Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, 2024 WL 98387, at *3 (D. Colo. Jan. 1, 2024) (observing that Robbins Geller Rudman & Dowd LLP is "highly experienced in prosecuting securities class actions"); *see also* www.gelaw.com; www.rgrdlaw.com; and www.robbinsllp.com.

#### 2.   The Settlement Was Negotiated at Arm's Length

The Settlement was negotiated at arm's length, as it was reached only after Plaintiffs and Plaintiffs' Counsel had gained a thorough understanding of the claims' merits, and after lengthy mediation efforts overseen by a neutral, third-party mediator with considerable experience in complex shareholder class actions.  Mr. Danilow conducted an extensive and hard-fought in-person mediation session with the Parties, apprised the Parties of each side's respective strengths and weaknesses, and worked with the Parties for the entire session that lasted over twelve hours to

15

reach an agreement on the Settlement. Mr. Danilow's direct participation further "ensures that the negotiations were conducted at arm's length and without collusion between the parties." *In re Viopharma Inc. Sec. Litig.*, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016); *Bredhenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations 'virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.'").

### 3. The Proposed Settlement Is Adequate in Light of the Four Rule 23(e)(2)(C) Factors

#### (a) Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(c)(i), which overlaps with *Girsh* in many respects (*i.e.*, factors 1, 4-9), instructs the Court to consider the adequacy of the Settlement relief in light of the costs, risks, and delay that trial and appeal would inevitably impose. *Compare* Fed. R. Civ. P 23(e)(2)(C)(i) *with Girsch*, 521 F.3d at 157 (factor one focuses on the complexity, expense, and likely duration of the litigation). This "factor one" also weighs in favor or approval.[6]

The Actions would face a significant risk of substantial delay before ultimate resolution, including delays associated with the motion for remand, potential additional briefing on class certification, fact and expert discovery, summary judgment, scheduling trial, and potential appeals that could last for years into the future. *See In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 103 (D.N.J. 2012) ("By reaching a favorable Settlement with most of the remaining Defendants prior to the disposition of Defendants' renewed dismissal motions or even an eventual trial, Class Counsel have avoided significant expense and delay, and have also provided an immediate benefit

---

[6] The second *Girsh* factor, the reaction of the class to the settlement, does not yet apply, and will be addressed at the final approval stage after Class Members have been given notice of the Settlement and have had an opportunity to be heard.

to the Settlement Class."). The near-term relief that the Settlement provides to Class Members warrants approval in light of the delays inherent in continued litigation.

Further, the relief is certainly adequate considering the many risks of continued litigation, which would require Plaintiffs to prove (and defeat Defendants' counterarguments regarding) conflicts of interest, unfair price and process, materially misleading statements and omissions in the Proxy, and damages at trial based on Merger valuation and stock sales above the Redemption Price. *See Girsh*, 521 F.2d at 157 (risks of establishing liability, damages, and maintaining a class action support settlement approval); *QuantumScape* Tr. at 62 ("the positive reaction to the stock price [post-Merger can] make[] a weak [SPAC] case"); *In re Hennessy Cap. Acquisition Corp. IV S'holder Litig.*, 318 A.3d 306, 322 (Del. Ch. 2024) ("a finding of unfair price (not to mention damages) may prove unobtainable [when a de-SPAC entity's] stock price … traded around $10 per share for months"); *see also In re Dell Techs. Inc. Class V S'holders Litig.*, 300 A.3d 679, 723 (Del. Ch. 2023) ("If th[e jury] … rejected any of the core premises of … [P]laintiff's valuation theories, then any damages recovery could have been significantly reduced or eliminated," and Defendants "might succeed in proving entire fairness (by demonstrating that the price was sufficiently fair to overcome any process problems)."). In addition, the Federal Action may be subject to dismissal if the Court denied the motion to remand. Although Plaintiffs believe the Actions are strong, they acknowledge there are risks to litigation and ultimate recovery.

The $14 million Settlement here represents a very good result. The total recovery is at the high/mid-range when compared with other SPAC settlements that have been approved in Delaware Chancery Court, as set forth in the chart below:

| | |
|---|---|
| *In re Multiplan Corp. S'holders Litig.*, 2023 WL 2329706 (Del. Ch. Mar. 1, 2023) | $33.75 M |
| *In re Lordstown Motors Corp.*, C.A. No. 2021-1066-LWW (Del. Ch. July 5, 2024) | $15.5 M |

17

| | |
|---|---|
| *Yu v. RMG Sponsor, LLC*, 2024 WL 4547457 (Del. Ch. Oct. 18, 2024) | $11.99 M |
| *In re FinServ Acquisition Corp. SPAC Litig.*, 2024 WL 4472073 (Del. Ch. Oct. 10, 2024) | $9.5 M |
| *Delman v. Riley*, 2024 WL 4547452 (Del. Ch. Oct. 17, 2024) | $8.5 M |
| *Laidlaw v. GigAcquisitions2, LLC*, C.A. No. 2021-0821-LWW (Del. Ch. Oct. 9, 2024) | $7.25 M |
| *Bushansky v. GigAcquisition4, LLC*, 2024 WL 4449788 (Del. Ch. Oct. 8, 2024) | $2.5 M |

The Settlement is also more than twice the $6 million recovered for the SPAC subclass recently approved by the Court in the Northern District of Illinois in *Burbige, et al. v. ATI Physical Therapy*, C.A. 1:21-cv-04349.

Based on this analysis, the Settlement is an exceptional result for the Class. The Settlement falls well within the range of reasonableness in light of the attendant risks and uncertainties of continued litigation, and should be preliminarily approved. *See Girsh*, 521 F.2d at 157.

### (b)     The Proposed Method for Distributing Relief Is Effective

As demonstrated below, the method and effectiveness of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are effective. The Notice plan involves direct mail notice to all those who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in *The Wall Street Journal* and over a national newswire service. In addition, a settlement-specific website will be created where settlement-related and other key documents will be posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order.

Plaintiffs propose a thorough and comprehensive claims administration process. Specifically, a standard claim form will request the information necessary to establish membership in the Class and calculate a claimant's Recognized Claim pursuant to the Plan of Allocation. The

Settlement Administrator will process the Proofs of Claim, calculate claimants' recognized losses and, ultimately, distribute the Net Settlement Fund to Eligible Class Members.

### (c)  Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." The Notice provides that Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees not to exceed one-third of the Settlement Amount and litigation expenses in an amount not to exceed $75,000, plus interest. With respect to the timing of payment, the Stipulation provides that any fees and expenses, as awarded by the Court, shall be paid to Plaintiffs' Counsel once the Court executes an order awarding such fees and expenses. *See* Stipulation, ¶ 17.

### (d)  The Parties Have No Additional Agreement Other than an Agreement to Address Requests for Exclusion

The Parties have entered into a standard supplemental agreement which provides solely that in the event that Class Members that exceed a certain threshold validly request exclusion from the Class, Defendants shall have the option to terminate the Settlement. *See* Stipulation, ¶ 46; Fed. R. Civ. P. 23(e)(2)(C)(iv).

### (e)  The Settlement Treats Class Members Equitably

The Settlement also treats Class Members equitably under Federal Rule of Civil Procedure 23(e)(2)(D). Plaintiffs' Notice provides that if the Settlement is approved by the Court, the Net Settlement Fund will be distributed to Eligible Class Members who timely submit valid Proofs of Claim pursuant to the Plan of Allocation. The Net Settlement Fund will be distributed to Eligible Class Members on a *pro rata* basis, based on the relative size of their Recognized Claims.

## V.    THE COURT SHOULD APPROVE THE NOTICE PLAN

Plaintiffs propose that mailed and published notice be given substantially in the form of the Notice and Summary Notice, attached as Exhibits B and C to the Stipulation.  The proposed Notice fulfills the requirements of due process and complies with the Federal Rules of Civil Procedure.

The Court must direct notice in a "reasonable manner" to potential Class Members.  Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(c)(2)(B) provides that for "any class certified under Rule 23(b)(3) … the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Notice must be "'reasonably calculated … to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Tennille v. W. Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974)).

Here, the proposed Notice describes the Settlement in plain terms, the considerations that caused Plaintiffs and Plaintiffs' Counsel to conclude that the Settlement is fair, adequate, and reasonable, the maximum amount Plaintiffs' Counsel will seek in attorneys' fees and expenses, the procedure for requesting exclusion or filing objections, and the date and time of the Settlement Hearing.  *See* Rule 23(c)(2) and 15 U.S.C. §78u-4(a)(7).

Plaintiffs, through an experienced settlement administrator, A.B. Data, Ltd., propose to give interested parties notice in two ways: by First-Class Mail (or email, where email addresses are available), addressed to all members of the Class who can reasonably be identified and located; and by publication in a nationally-circulated newspaper, *The Wall Street Journal*, and over the *PR Newswire*.  The Settlement Administrator will also post the Notice on a dedicated website:

20

www.interprivatestockholdersettlement.com.  The proposed method provides Class Members with the best notice practicable under the circumstances.

## VI.      CONCLUSION

Plaintiffs respectfully request that the Court issue an order substantially in the form of the proposed Preliminary Approval Order, submitted herewith.

Dated:  December 4, 2024

**OF COUNSEL:**

**GRANT & EISENHOFER P.A.**
David Wissbroecker
123 S. Justison Street, 7th Floor
Wilmington, DE 19801
(302) 622-7000

**BRONSTEIN, GEWIRTZ &**
  **GROSSMAN, LLC**
Peretz Bronstein
Eitan Kimelman
60 East 42nd Street, 46th Floor
New York, NY 10165
(212) 697-6484

*Counsel for Plaintiff Louis Smith*

**GRANT & EISENHOFER P.A.**

*/s/ Michael J. Barry*
Michael J. Barry (#4368)
Kelly L. Tucker (#6382)
123 S. Justison Street, 7th Floor
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100

*Counsel for Plaintiff Louis Smith*

21